SIMONS v. CROMWELL et al.

(Circuit Court of Appeals, Second Circuit.  December 19, 1919.)

No. 57.

WILLS ⬤⇒68—MAKING OF CONTRACT QUESTION FOR JURY.

 Evidence in support of an allegation that a decedent, in consideration of services rendered and to be rendered to her by plaintiff, and which were afterward rendered, promised to bequeath to plaintiff a stated sum by her will, *held* sufficient to require submission of the issue to the jury.

 Rogers, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern District of New York.

Action at law by Annie S. Simons against William Nelson Cromwell and another, executors.  Judgment for defendants, and plaintiff brings error.  Reversed.

Roger Foster, of New York City, for plaintiff in error.

Sullivan & Cromwell and Clarke M. Rosecrantz, all of New York City (P. L. Miller, of New York City, and Hiram C. Todd, of Saratoga Springs, N. Y., of counsel), for defendant in error Cromwell.

Edgar T. Brackett, of Saratoga Springs, N. Y., for defendant in error Cramer.

Before WARD, ROGERS, and MANTON, Circuit Judges.

WARD, Circuit Judge.  This is a writ of error to a judgment for the defendants, executors of the estate of Frank Leslie, deceased, directed by the court.  The complaint demanded judgment in the sum of $40,000 upon three separate causes of action as follows:

First.  A promise made by the decedent, Mrs. Leslie, to the plaintiff in 1902, that in consideration of personal services theretofore and to be thereafter rendered by her, to bequeath her a legacy of $50,000; whereas, Mrs. Leslie bequeathed her a legacy of only $10,000.  ·

Second.  A promise, in consideration of the services aforesaid, to pay to the plaintiff the reasonable value of the said services, which was the sum of $50,000, no part of which the decedent has paid, except by a legacy of $10,000.

Third.  A promise, in consideration of the services aforesaid, to bequeath the plaintiff a sum equal to the reasonable value thereof, which was $50,000; whereas, the decedent left the plaintiff only a legacy of $10,000.

The answers of the defendants contained denials, and also pleaded to the second cause of action the New York statute of limitations of six years.

Mrs. Leslie sustained a paralytic stroke in 1902, and was thereafter, down to the time of her death at the age of 77, in 1914, a semi-invalid.  Evidence as to her wealth and as to her relatives was proper, and it appeared therefrom that she was a rich woman, with no direct descendants, and that the plaintiff is her first cousin.  Our conclusion makes it unnecessary to state in detail the particulars of Mrs. Leslie's

disabilities and of the plaintiff's services. Suffice it to say that for the 12 years in question the plaintiff spent one or two months each year with Mrs. Leslie, and did render her services made necessary by her age and condition of health.

Taking up, first, the second cause of action, it will be seen that within 6 years of the decedent's death the plaintiff could in the aggregate have rendered services covering a period in all of not over one year. We agree with the trial judge that $10,000 was as much as any jury could award as the reasonable value of such services. Any verdict rendered for the plaintiff on this cause of action would have been set aside by the trial judge, and therefore it was within his power to direct a verdict in favor of the defendants on it.

The testimony in support of the third cause of action was that of the plaintiff's son, as follows:

"I had a conversation with Mrs. Leslie about what she intended to do for my mother after her death in the year 1904 at Charleston. I saw that Mrs. Simons was running down in health, and I thought I would take her out to the theater. I wanted to invite her to the theater. So, on a drive in a carriage with Mrs. Leslie—we used to relieve her from that duty at times—I invited her, and she said she didn't want to go. I knew she wouldn't go, because she always went to bed at 9 o'clock. I asked her, did she object to Mrs. Simons going, and she said she did. I said, 'I think she ought to have a little recreation,' and she said to me, 'Robert, your mother is going to be well paid for what she is doing for me, and I don't wish her to go,' so I dropped the conversation further.

"Q. Did she say how your mother was going to be paid? A. I inferred from her previous statement—

"Mr. Rosecrantz: No; no.

"A. Not at that time.

"Q. What did she state at any other time? A. She said some short while before that, on one of these drives, 'I don't know why your mother worries so about the future, as I have provided for her.'"

This is not the language of contract, but of pure intention or expectation, quite insufficient to prove an agreement to bequeath to the plaintiff a sum equal to the reasonable value of the services rendered or to be rendered by her.

The first cause of action is the only one requiring serious consideration. To recover, the plaintiff must establish a promise made to her by the decedent that, in consideration of services rendered and to be rendered, the decedent would leave her a legacy of $50,000. Under section 829 of the Code of Civil Procedure the plaintiff was an incompetent witness on this subject. Still such a promise could be established by circumstantial testimony. The testimony on which the plaintiff relies is that of her husband, as follows:

" * * * March, 1902. Mrs. Leslie did not get up until very late, about 9 o'clock in the morning, and I had gone to my business. Saturday afternoon I went into the room with her, and I said, 'Cousin Florence, my wife tells me that you are going to leave her $50,000 in your will, and I wish to thank you for it.' Her reply was, 'Robert, I am due Annie that money for what she has done in many services rendered to me in my present condition, and I intend to call on her in the future.'

"Q. Do you recollect anything more about that conversation? A. That is the conversation. Then there was no more conversation after that. Mrs. Leslie was a woman that, whenever you said anything to her, that settled it. * * *

"Q. You must use the language as near as you recollect that you used to your wife? A. I said, 'I went to thank Cousin Florence for that $50,000 she proposed to leave to you, and she replied to me, 'Robert, I am due Annie this, because she has been kind to me, and has nursed me in my recent illness, and I propose to call on her in the future.'"

This testimony, if believed, was evidence that the decedent had admitted a conversation with the plaintiff as to her services rendered and to be rendered, and as to the compensation to be paid for them in the decedent's will. A jury might find it to be, not language of expectation or intention, but of agreement. The details necessary to establish a contract appear specifically; the consideration, the amount, and manner of compensation are all stated. The decedent, perhaps in not technical language, but substantially stated to the witness the consideration, viz. that there was "due" by her to Annie the sum of $50,000 for services rendered in the past and for which she was going to call in the future. These services had been and were subsequently rendered by the plaintiff. We think the case should have gone to the jury upon the first cause of action. The testimony in support of it was quite different from that of the plaintiff's son in support of the third cause of action. No doubt it would be proper to instruct the jury as to the care and scrutiny with which they should weigh the testimony, in view of all the circumstances of the case, but in our opinion the question was for them. McKeon v. Van Slyck, 223 N. Y. 392, 119 N. E. 851.

The judgment is reversed.

ROGERS, Circuit Judge, dissents.